IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAWANDA M. GOODWIN, | ) | CASE NO. 5:07 CV 3530 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | MAGISTRATE JUDGE |
| Commissioner of Social Security, | ) | BENITA Y. PEARSON |
| | ) | |
| Defendant. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |

Plaintiff Dawanda M. Goodwin sought judicial review of the Social Security Administration's final decision denying her request for continued Supplemental Security Income. Finding that the decision to cease benefits to Goodwin is based upon proper legal standards and supported by substantial evidence, this Court recommends that the Social Security Administration's final decision be affirmed.

I. Overview

The crux of the matter is whether the impairment which disabled Goodwin and entitled her to receive Supplemental Security Income ("SSI") starting in 2001, had medically improved to an extent that, at the time of the periodic review three years later, she was no longer disabled. The Social Security Administration ("Agency") pleads that the Administrative Law Judge ("ALJ") reasonably determined that the impairment for which Goodwin had been awarded SSI had medically improved eliminating her disability and, accordingly, her eligibility for continued

1

SSI benefits.  Goodwin contends that, at the time of the periodic review, she was still disabled and entitled to SSI.  She claims that, during an 8-hour workday, she had to elevate her left leg and/or have a sit/stand option which essentially diminished her residual functional capacity and prevents her from performing the jobs identified by the vocational expert.  She challenges the ALJ's failure to believe her subjective complaints or to call a medical expert to testify.

After reviewing the administrative record as a whole, including the medical and other evidence presented, Goodwin's testimony and statements made to medical care providers, and the legal standards applied, the Court finds that the Agency relied upon the correct legal standards and reached a decision based upon substantial evidence.

## II.  Procedural History

After severely breaking her left leg in an automobile accident, Goodwin applied for SSI to compensate for a resulting disability that the Agency determined to have begun as of July 26, 1999.  Goodwin received SSI until, following a periodic review to determine whether she was still disabled and, thereby still entitled to SSI, the Agency concluded that, as of January 1, 2004, Goodwin's disability had ceased and ordered the cessation of her SSI.  Goodwin appealed the discontinuation of her SSI within the Agency. After conducting hearings, the Disability Hearing Officer and the Adminstrative Law Judge upheld the cessation of SSI and the Appeals Council denied review prompting Goodwin to timely appeal to this Court.

Specifically, Goodwin alleges the following three assignments of error:

1. The ALJ erred by finding a residual functional capacity that does not properly incorporate all of Goodwin's limitations, including the need to elevate her leg and/or have a sit/stand option at will.

2. The ALJ erred by finding Goodwin not fully credible.

       3.       The ALJ erred by not fully developing the record.

ECF No. 14 at 2.

### III.  Applicable Law and Analysis

#### A.  Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied proper legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).  Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence. "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 288, 389-90 (6th Cir. 1999).  The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  Furthermore, judicial review of the ALJ's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ.  *Id.*

B.  Administrative Review of a Previous Finding of Disability

Upon review to determine whether a disability continues, the ALJ conducts a seven-step analysis.  20 C.F.R. § 416.994(b)(5).  At Step 1, the ALJ considers whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment in the Listing of Impairments. At Step 2, the ALJ determines whether there has been a medical improvement, and at Step 3, the ALJ considers whether any such improvement relates to the claimant's ability to do work. If the ALJ finds no medical improvement related to the claimant's ability to work, then she must decide at Step 4 whether an exception to those requirements applies. If the ALJ finds medical improvement related to the claimant's ability to perform work or that an exception applies, the then ALJ determines at Step 5 whether the claimant's current impairments in combination are severe. At Step 6, the ALJ assesses the claimant's current ability to engage in substantial gainful activity by considering the claimant's current residual functioning capacity and deciding whether the claimant can return to past relevant work. Finally, if the claimant cannot return to past relevant work, the ALJ, at Step 7, determines whether significant numbers of other jobs exist in the national economy which the claimant can perform based on his RFC, age, education, and past work experience.  *Id.*

"There is a statutory requirement that, if [a claimant] is entitled to disability benefits, [the claimant's] continued entitlement to such benefits must be reviewed periodically." 20 C.F.R. § 416.994(a).  Despite having been found disabled for a period of time, the claimant is not entitled to a presumption of continuing disability.  *Cutlip*, 25 F.3d at 286.  Instead, the decision to continue or terminate benefits must be made  "without any initial interference as to the presence or absence of disability being drawn from the fact that the individual has previously

4

been determined to be disabled." *Id.*  And, "on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition." *Id.*

If a review yields a finding that there has been a medical improvement in a person's impairment related to that person's ability to work, then the previously disabled person may no longer be disabled if she can engage in substantial gainful activity. 20 C.F.R. § 416.994(b).  In a cessation of benefits case such as this, the issue is whether the claimant's impairment has medically improved to such an extent that she is able to perform substantial gainful activity. 42 U.S.C. § 423(f); *Cutlip*, 25 F.3d at 286.

      1.     Medical Improvement

"Medical improvement is any decrease in severity of [the claimant's] impairment(s) which [were] present at the time of the most recent favorable medical decision that [the claimant was] disabled." 20 C.F.R. § 416.994(b)(1)(I).  Further, "[a] determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." *Id.*

Medical improvement alone, however, is not enough to result in a finding that a disability has ended.  A determination that there is medical improvement related to a claimant's ability to do work terminates a disability, only if it is *also* shown that the claimant is now able to engage in substantial gainful employment.  In this case, the ALJ found both to have occurred.

The ALJ found that as of January 1, 2004, the severity of Goodwin's impairment had lessened and her functional capacity had increased. The following evidence supports the ALJ's decision.

Dr. Goren, the Medical Expert ("ME"), testified that based on the medical record before

him, Goodwin has experienced medical improvement. (Tr. 697.) He stated that Goodwin's fracture is now healed and that there is no severe impairment related to the fracture remains. (Tr. 694.) He testified in response to pointed questions on cross-examination by Goodwin's counsel that, based on the medical record,[1] Goodwin does not need to elevate her leg, would be able to complete an eight-hour work day, and would not need a sit/stand option at will. (Tr. 705.)

Dr. Berkowitz, the consultative physician, commented in his report that Goodwin's left leg is "ok" and is not her primary complaint. (Tr. 528.) He noted that Goodwin has minimal pain to her left leg that is intermittent, expected and tolerable. (Tr. 528.) He summarized that Goodwin is doing quite well with respect to her left leg. (Tr. 531.) Dr. Berkowitz repeated in his summary that Goodwin has relatively minimal pain regarding her left leg. (Tr. 531.) Goodwin did not mention needing to elevate her left leg during the day to Dr. Berkowitz. (Tr. 528-35.)

Goodwin told another consulting physician, psychologist Robert Dallara, Jr., both that she could not work due to problems with her legs and that she did not want to work so that she could care for her grandchildren.[2] (Tr. 524; 526.) Again, when in the presence of a medical provider, Goodwin did not mention the need to elevate her left leg or seek any other accommodation during a work day.

As the result of a referral from her internal medicine doctor, Dr. Midian, a pain management specialist, also examined Goodwin. He noted that Goodwin was not complaining of problems from the injury to her left leg. (Tr. 560.) Tests of Goodwin's reflexes in her left leg

---

[1] The issue of whether the ALJ fully and fairly developed the record is discussed below.

[2] Goodwin did not challenge the ALJ's findings regarding her mental impairment.

were inconsistent as one test was normal and another appeared diminished. (Tr. 561.) Dr. Midian could make no medical conclusion why the test results differed. He, however, reasoned: "So, I do not know if she was just not being compliant or what." (Tr. 561.) Dr. Midian's record, like those of the other medical care providers who examined Goodwin, does not include any reference that she needs to elevate her left leg. (Tr. 560-61.)

The record as a whole, with emphasis on the above consistent medical evaluations, supports the ALJ's finding that Goodwin's medical impairment had improved to such an extent that she was able to perform substantial gainful activity.

      2. Credibility Findings

The ALJ did not find credible Goodwin's subjective complaints regarding the limitations relative to her left leg. Contrary to the weight of the medical evidence in the record, Goodwin asserts that a determination of her residual functional capacity should include the need to elevate her left leg during an eight-hour work day and/or to have a sit/stand option.

It is for the Agency, not a reviewing court, to make credibility findings. *See Hardaway v. Sec'y of Health & Human Servs., 823 F.2d 922, 928 (6th Cir.1987); Williamson v. Sec'y of Health & Human Servs., 796 F.2d 146, 150 (6th Cir.1986).* Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Hopkins v Comm'r of Soc. Sec., 96 Fed.Appx. 393, 395 (6th Cir. 2004)* (citing *Siterlet v. Sec'y of Health and Human Servs., 823 F.2d 918, 920 (6th Cir. 1987)*). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs., 818 F.2d 461, 463 (6th Cir. 1987).*

When an individual alleges disabling symptoms, 20 C.F.R. § 416.929 requires the ALJ to

7

follow an outlined process for evaluating these symptoms.  First, the ALJ must determine whether objective medical evidence supports the claimant's allegations regarding the disabling effects of the impairment.  *Id.*  If the ALJ finds that the objective medical evidence does not support the claimant's allegations, the ALJ may not simply reject the claimant's statements, but must consider them in light of the entire record.  *Id.*   In assessing the credibility of statements, the ALJ must look to the relevant evidence in the record.  *See* SSR 96-7p.  In addition to  the medical evidence, the ALJ should consider seven factors, as they may be relevant to a particular claim.[3]  The ALJ need not analyze all seven factors, but should make clear that he considered the relevant evidence.  *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

If an ALJ rejects a claimant's testimony as not being credible, the ALJ must clearly state his reasons for doing so to make obvious to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p; *Auer v. Sec'y of Health & Human Servs.,* 830 F.2d 594, 595 (6th Cir.1987);  *see also Cross*, 373 F. Supp. 2d at 733.

A significant portion of the ALJ's written decision in this case is devoted to detailing evidence contained in the record that supported the ALJ's finding that Goodwin's testimony

---

[3] The seven factors are: (1) individuals daily activities; (2) location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 416.929(c); SSR 96-7p.

8

downplaying her lack of medical improvement was not credible.  Some of those reasons follow:

1. After January 1, 2004, there was no record of Goodwin reporting to a physician problems with her left leg (which was the basis for the 2001 disability determination); instead, Goodwin primarily complained of problems with the right leg, not the left leg.  (Tr. 528-35; 560-61.)

2. Goodwin has not presented, nor has the Court found within the record, a report of a physician, after January 1, 2004, recommending that Goodwin needs to elevate her left leg.

3. More than one emergency room physician who examined Goodwin after January 1, 2004 suspected Goodwin's complaints to be evidence of drug-seeking behavior rather than medically grounded. (Tr. 596; 616.)

4. Goodwin made an exaggerated and inconsistent statement to an emergency room physician regarding the damage to a vehicle involved in her second automobile accident claiming that the vehicle had received significant damage when a separate contemporaneous "Nursing Assessment" noted that Emergency Medical Services had reported no damage to the automobile.  (Tr. 614-15; 642.)

5. The medical expert commented on Goodwin's "deplorable" and "tragic" use of alcohol as an analgesic.  (Tr. 696.)

6. And, as stated above, Goodwin admitted preferring to caring for her grandchildren to working which could be an indication of her ability to work.  (Tr. 524; 526.)

Accordingly, this Court determines that the ALJ's finding that Goodwin's testimony lacked credibility is supported by the record and sufficiently detailed in the ALJ's written report.

C. The Need to Further Develop the Record

Goodwin argues that the ALJ erred in not fully and fairly developing the record by not ordering a consultative examination by an orthopedic specialist to support her alleged need to elevate her left leg during an eight-hour work day.  The burden is on the claimant to provide an adequate record upon which the ALJ can make an informed decision as to disability status.  *See*

*Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). The ALJ is required to "develop the factual record fully and fairly" and to conduct a "full inquiry." *See Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986); *Landsaw*, 803 F.2d at 214. The ALJ, however, is not required to expand the panoply of medical evidence available to her by ordering a consultative examination unless the record establishes that such an examination is *necessary* for an informed disability determination. *See Landsaw*, 803 F.2d at 214.

In this case, the evidence presented was consistent with all <u>but</u> Goodwin's statements regarding the intensity, persistence, and limiting effects of her symptoms relative to her left leg. Dr. Goren, the medical expert, testified that based upon his review of the record Goodwin did not need to elevate her left leg or have a sit/stand option. (Tr. 701; 703; 705). He also acknowledged, in response to the ALJ's questions and those posed by Goodwin's attorney, that his medical opinion conflicted with Goodwin's testimony and that, from the medical evidence in the record, he could not confirm her self-proclaimed need to elevate her left leg. (Tr. 697; 705.) Unable to justify Goodwin's self-proclaimed accommodation, the medical expert offered that follow-up by an orthopedic surgeon for a prolonged period of time may ultimately answer the question of whether Goodwin's complained of limitations are credible. (Tr. 702-04.) It is this point, presumably, that Goodwin clings to in arguing that the record was not fully developed.

This Court disagrees with Goodwin.

Based upon the record available to the Agency and this Court, the medical expert was able to testify that Goodwin's impairment had medically improved relative to her ability to work and that he did not "see clear evidence in the record" that she needed to elevate her left leg or

10

have a sit/stand option. (Tr. 697, 705.) He was unable, however, based upon the record, to testify definitively on cross examination whether <u>any</u> medical conditions supported Goodwin's complaints. Facing that seemingly uncomfortable position, he offered that "the best answer would come from continuing follow-up by a sophisticated orthopedic surgeon." (Tr. 702.) Although a referral to a medical orthopedic expert might have been helpful here, so too might a polygraph examination. Neither was sought nor necessary.

In sum, Goodwin has not met the requisite burden of establishing that such an examination was "necessary" in her case. *See Robinson v. Sullivan*, 337 F.2d 1087 at *1 [table], 1989 WL 119382 (6th Cir. 1989). The medical evidence contained in the record coupled with the ALJ's determination that Goodwin's testimony lacked credibility constitutes substantial evidence upon which the ALJ based her decision. Because substantial evidence exists, the record does not establish that such an examination, although preferred by Goodwin, is *necessary* for a disability determination. Therefore, the ALJ did not violate her duty to ensure that her disability determination was based upon a fair and fully developed record.

## IV. Conclusion

This case may indeed be one of many wherein the ALJ may have reached a different finding had any number of reasoned conclusions been different. An ALJ's findings are not subject to reversal when substantial evidence exists in the record (or, as in this case, may possibly

have been produced) that would have supported a different conclusion. It is, accordingly, recommended that the ALJ's decision and cessation of benefits determination be AFFIRMED.


Dated: November 19, 2008 /s/ Benita Y. Pearson
Benita Y. Pearson
United States Magistrate Judge


OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).